UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MIYA ELEY, *et al.*, *on behalf of themselves and all others similarly situated*,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STADIUM GROUP, LLC, *et al.*,<br><br>　　　　Defendant. | Civil Action No. 14-cv-1594 (KBJ) |

## MEMORANDUM OPINION

　　Plaintiffs Miya Eley, Tamika White, Jessica Glover, Crystal Fletcher, Ashley Tyree, Shrell Turner, Britney Robinson, and Karen Tucker ("Plaintiffs") are exotic dancers who are currently, or were previously, employed by Stadium Club, a nightclub in northeast Washington, D.C. Plaintiffs have brought claims on behalf of themselves and others similarly situated against their alleged employers, Stadium Group, LLC, and RCX, LLC, ("Defendants") seeking to recover unpaid wages and statutory damages under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the D.C. Minimum Wage Act Revision Act, D.C. Code §§ 32-1001 *et seq.* ("DCMWA"). Plaintiffs claim that they were improperly classified as independent contractors and were not paid at an hourly rate equal to the minimum wage required by federal and D.C. law. (*See* Fifth Am. Compl., ECF No. 19, ¶ 34.)

　　Before this Court at present is Plaintiffs' motion for notice to potential plaintiffs and for conditional certification of a collective action, which the defendants have

chosen not to oppose.  (*See* Pls.' Mot. and Mem. Supp. of Mot. Notice Potential Pls. and Cond'l Certif'n ("Pls.' Mot."), ECF No. 27.)  After reviewing the submissions, this Court concludes that Plaintiffs' FLSA claims warrant conditional certification.  Plaintiffs' proposed disclosure plan is mostly approved, although the Court declines to order the production of the last four digits of potential plaintiffs' social security numbers.  As to the collective DCWMA claims, Plaintiffs are instructed to submit supplemental briefing on the impact of recent changes to the statute if they wish to pursue these claims in federal court.

I.     **CONDITIONAL CERTIFICATION UNDER THE FLSA**

The FLSA permits employees to bring claims on "behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b).  To join this type of claim, called a "collective action," an employee must provide written consent to become a party plaintiff.  *See id.*  Federal courts typically engage in a two-stage inquiry when evaluating whether a claim should proceed as a collective action.  *See, e.g.*, *Blount v. U.S. Sec. Assocs.*, 945 F. Supp. 2d 88, 92 (D.D.C. 2013); *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 52 (D.D.C. 2012).  At the first stage—sometimes called "conditional certification," *Dinkel*, 880 F. Supp. 2d at 53—the plaintiffs "must make a 'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  *Blount*, 945 F. Supp. 2d at 92 (quoting *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 117 (D.D.C. 2004)).  This showing "has been described as 'not particularly stringent, fairly lenient, flexible, [and] not heavy,'" *Dinkel*, 880 F. Supp. 2d at 53 (alteration in original) (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir.2008))

(internal quotation marks omitted), and it "may be satisfied based on pleadings and affidavits," *Blount*, 945 F. Supp. 2d at 93.  If a plaintiff makes this showing, "then the Court may conditionally certify the class and may facilitate notice of the collective action to potential plaintiffs to give them the opportunity to opt in to the litigation." *Id.* at 92.  The case then "proceeds as a representative action through discovery." *Id.*

The second stage occurs after discovery, at which point the defendant "may move to decertify the class based on the evidentiary record developed during the discovery period." *Id.* at 93.  At that point, the court conducts a more searching inquiry to determine "whether each plaintiff who had opted in . . . is in fact similarly situated to the named plaintiff[s]." *Dinkel*, 880 F. Supp. 2d at 53 (alteration in original) (internal quotation marks and citation omitted).

The instant case is at the conditional certification stage.  Defendants do not oppose Plaintiffs' motion, opting instead to save their objections for stage two.  At this point, the only question is whether Plaintiffs have made the appropriate showing that they and their putative fellow class members are "similarly situated." *See Blount*, 945 F. Supp. 2d at 94 ("[I]ssues going to the merits are not appropriate for consideration at [the conditional certification stage]."); *Dinkel*, 880 F. Supp. 2d at 53 ("At this stage, district courts should ordinarily refrain from resolving factual disputes and deciding matters going to the merits.").  Having reviewed Plaintiffs' complaint and affidavit support, this Court finds that Plaintiffs have satisfied their burden.

Plaintiffs allege that Defendants violated the FLSA by misclassifying them as independent contractors and failing to pay them the legally required minimum wage.  (*See* Fifth Am. Compl., ECF No. 19, ¶ 34.)  Plaintiffs seek conditional certification for

"[a]ll individuals [who] performed duties as exotic dancers at the Stadium Club exotic dance club in Washington, D.C.[,] [from] September 19, 2011 to the present." (Pls' Mot. at 17.)[1]  Their allegations are supported by affidavits from each of the named plaintiffs.  (*See* Decl. of Ashley Tyree, Ex. 1 to Pls.' Mot., ECF No. 27-1; Decl. of Britney Robinson, Ex. 2 to Pls.' Mot., ECF No. 27-2; Decl. of Crystal Fletcher, Ex. 3 to Pls.' Mot., ECF No. 27-3; Decl. of Karen Tucker, Ex. 4 to Pls.' Mot., ECF No. 27-4; Decl. of Shrell Turner, Ex. 5 to Pls.' Mot., ECF No. 27-5; Decl. of Tamika White, Ex. 6 to Pls.' Mot., ECF No. 27-6; Decl. of Jessica Glover, Ex. 7 to Pls.' Mot., ECF No. 27-7; Decl. of Mila Eley, Ex. 8 to Pls.' Mot., ECF No. 27-8.)  Each of the named plaintiffs avers that, to the best of her knowledge, Defendants paid no wages to exotic dancers at Stadium Club during this time period—instead, Plaintiffs and other dancers received tip money from customers as the sole source of compensation—and that it was company policy not to pay the dancers.  (*See, e.g.*, Decl. of Ashley Tyree ¶¶ 18, 20–21.)  Plaintiffs also maintain that "Defendants enforced a series of charges, fees and fines requiring [Plaintiffs] to pay Defendants to start their work shift and to share with Defendants a significant portion of the money they received as tips from customers."  (Pls.' Mot. at 9.)

      This showing is more than enough to meet Plaintiffs' light burden.  Plaintiffs allege that all of the exotic dancers employed by Defendants during this time were subject to the same illegal policy of misclassification and under-payment.  *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 370 (S.D.N.Y. 2007) ("Courts typically authorize dissemination of . . . notice upon a simple showing that other employees may

---

[1] Citations to the documents the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

4

also have been subjected to the employers' practice of 'misclassifying.'"). And Defendants do not dispute that Plaintiffs' allegations and eight affidavits are sufficient for a "modest factual showing." *See, e.g.*, *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625 RJS, 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015) (granting conditional certification on the basis of a single plaintiff's affidavit); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 CIV. 265 PAE, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (same); *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 681 (D. Kan. 2004) (two affidavits).

Thus, this Court will conditionally certify the proposed class.

## II.   FACILITATION OF NOTICE

Plaintiffs also seek court-supervised notice in a variety of forms. The Supreme Court has recognized that the benefits of a collective action "depend on employees receiving accurate and timely notice . . . so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Therefore, "it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Id.* at 171. As before, Defendants do not contest Plaintiffs' notice-related requests here.

First, Plaintiffs seek an Order from this Court requiring Defendants to disclose, within 15 days, the following information for all members of the conditionally certified class: names, last known home addresses, email addresses (business and personal), home and cellular telephone numbers, and the last four digits of social security numbers. "Courts routinely order the production of names and addresses in collective actions," *Blount*, 945 F. Supp. 2d at 97, and email addresses and phone numbers are

nearly as common, *see, e.g.*, *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 669 (S.D.N.Y. 2013) (ordering production of, among other information, phone numbers and email addresses); *Davis v. Westgate Planet Hollywood Las Vegas, LLC.*, No. 2:08-cv-00722-RCJ-PAL, 2009 WL 102735, at *15 (D. Nev. 2009 Jan. 12, 2009) (same); *Poreda v. Boise Cascade, L.L.C.*, 532 F. Supp. 2d 234, 242 (D. Mass. 2008) (same). However, courts are more cautious when it comes to social security numbers, which implicate serious privacy concerns.  *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011) ("[C]ourts often decline to allow discovery of social security numbers due to privacy concerns[.]").

Plaintiffs have not explained any particular need for the potential plaintiffs' social security numbers, and there is no reason to believe that names, home addresses, email addresses, and phone numbers will not be enough to reach all potential plaintiffs. Thus, this Court will order production of potential plaintiffs' names, home addresses, email addresses, and phone numbers, but will deny the request for production of the last four digits of any social security numbers.  If Plaintiffs "are unable to reach one or more potential plaintiffs based on the information that is produced, they may move for a further order requiring defendants to product additional information about those individuals."  *Blount*, 945 F. Supp. 2d at 97; *see Santinac v. Worldwide Labor Support of Ill., Inc.*, No. 1:15CV25-LG-RHW, 2015 WL 3486971, at *5 (S.D. Miss. June 2, 2015) (refusing to order production of the last four digits of plaintiffs' social security numbers where the plaintiffs had not established a need for the information); *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 377 (N.D.W. Va. 2012) (same).

6

Next, Plaintiffs seek approval of their proposed notice form (*see* Notice to Potential Pls., Ex. 10 to Pls.' Mot., ECF No. 27-10) and consent form (*see* Consent to Become Party Pl., Ex. 9 to Pls.' Mot., ECF No. 27-9), and permission to allow these forms to be delivered to the class members by postal mail, email, and text message, as well as posted in Stadium Club's dressing room. Plaintiffs also seek a 60-day opt-in period, measured from the date that its notice form is mailed. Defendants have not objected, and the Court sees nothing objectionable about Plaintiffs' requests, which are in line with what has been approved in other FLSA collective actions. *See Bhumithanarn*, 2015 WL 4240985, at *5 (granting notice via text message); *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) ("With regard to the use of email to notify potential plaintiffs of this litigation, 'communication through email is [now] the norm.'" (quoting *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)); *Whitehorn*, 767 F. Supp. 2d 445, 449 ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); *Davis*, 2009 WL 102735, at *15 (granting class notice via postal mail and email). Accordingly, this Court approves the Plaintiffs' proposed notice and consent forms and grants their request for distribution.

## III.   THE DCMWA CLAIMS

Plaintiffs contend that the conditional certification and notice procedures under the DCMWA are identical to those under the FLSA. (*See* Pls.' Mot. at 7 n.1.) But recent changes to the D.C. statute suggest this may no longer be the case. Specifically,

the DCMWA, which applies to broad categories of plaintiffs, once had a written-consent opt-in procedure that used to read as follows:

> [An] [a]ction to recover damages . . . may be maintained . . . by any 1 or more employees for an on behalf of the employee and other employees who are similarly situated.  No employee shall be a party plaintiff . . . *unless the employee gives written consent to become a party and the written consent is filed in the court in which the action is brought*.

D.C. Code § 32-1012(b) (2001) (emphasis added).  This statutory language mirrored the FLSA.  *See* 29 U.S.C. § 216(b); *see also Montes v. Janitorial Partners, Inc.*, No. 13-CV-410 (RJL), 2015 WL 5306191, at *3 n.6 (D.D.C. Sept. 9, 2015) (noting that the DCMWA as of March 2013 "contained a nearly identical [written consent] requirement" to the FLSA); *Dinkel*, 880 F. Supp. 2d at 52 (comparing the statutory language of section 216(b) and the DCMWA as it existed in 2012).  As a result, federal courts routinely evaluated FLSA and DCMWA claims using the same standards and procedures for conditional certification and notice.  *See, e.g.*, *Blount*, 945 F. Supp. 2d. at 92 (applying the same standard to both types of claims); *Dinkel*, 880 F. Supp. 2d at 53 n.3 (assuming, but not deciding, that the same standard applies).

The DCMWA provision was amended in February 2015 and the opt-in and written-consent procedures were excised and replaced with the following broader language: "[a]ctions [under the Minimum Wage Revision Act] may be maintained by one or more employees who may designate an agent or representative to maintain such action for and on behalf of themselves or on behalf of all employees similarly situated." D.C. Code § 32-1308(a)(1); *see* D.C. Code § 32-1012(a) ("A civil action [under the DCMWA] may be commenced according to § 32-1308.").[2]  Without opt-in and written-

---

[2] The new DCMWA also clarifies that employees are "similarly situated" for its purposes if they "[a]re

consent procedures that "restrict[] the right of recovery . . . to those who affirmatively file consents to participate in the suit[,]" *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y. 2001), group claims brought under the new DCMWA are likely to resemble class actions, rather than collective actions, and as the Supreme Court recently confirmed, class action claims brought under state law in federal court are generally governed by Rule 23 of the Federal Rules of Civil Procedure. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407, 410–11 (2010) (plurality opinion) (explaining that, unless the application of Rule 23 would "abridge, enlarge, or modify [a] substantive right" conferred by the state law and thereby violate the Rules Enabling Act, 28 U.S.C. § 2072(b), the conditions of certification set forth in Rule 23 apply to diversity claims brought in federal court under state law); *id.* at 429–31 (Stevens, J., concurring in part and concurring in the judgment) (same); *cf. Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 60–62 (D.D.C. 2012) (holding that the DCMWA's former opt-in provision prevented the application of Rule 23 to collective actions brought under the DCMWA in federal court).[3] Thus, it may well be that Plaintiffs here cannot proceed on their DCMWA claims utilizing the procedures applicable to the FLSA, and instead, they may be required to seek class certification under Rule 23. *See, e.g.*, *Ansoumana*, 201 F.R.D. at 84–85 (noting that, because the New York Minimum Wage Act lacked an "opt-in requirement[] analogous to the

---

or were employed by the same employer or employers, whether concurrently or otherwise, at some point during the applicable statute of limitations period[,]" "[a]llege one or more violations that raise similar questions as to liability[,]" and "[s]eek similar forms of relief." *Id.* § 32-1308(a)(2).

[3] "Although D.C. is not a state, *Shady Grove*'s . . . framework applies to federal court cases involving a local D.C. law." *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1334 n.2 (D.C. Cir. 2015) (citing *Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1107–08 (D.C. Cir. 2012)).

procedure authorized by the FLSA," plaintiffs sought "class certification under Rule 23 with regard to their state law . . . claims").

This significant wrinkle appears to have gone unnoticed by both parties. Thus, if Plaintiffs wish to pursue their DCMWA claims collectively, they will need to submit supplemental briefing that addresses the impact of the new DCMWA language on these claims.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for notice to potential plaintiffs and for conditional certification is **GRANTED IN PART and DENIED IN PART**. A separate order accompanies this memorandum opinion.

DATE: September 22, 2015

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge