UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MIYA ELEY, *et al.*, *on behalf of themselves and all others similarly situated*,<br><br>     Plaintiffs,<br><br>     v.<br><br>STADIUM GROUP, LLC, *et al.*,<br><br>     Defendants. | Civil Action No. 14-cv-1594 (KBJ) |

## MEMORANDUM OPINION

Miya Eley, Tamika White, Jessica Glover, Crystal Fletcher, Ashley Tyree, Shrell Turner, Britney Robinson, Karen Tucker, Keonda King, Antonia Miller, Angela Eiss, Sara Kendall, Ashley Gooden, Rayanee Tabbs, Autumn Gregory, Dana Ricks, and Taneisha King (collectively, "Plaintiffs") are former exotic dancers who have filed the instant lawsuit against Defendants Stadium Group, LLC and RCX, LLC ("RCX") to recover unpaid wages and statutory damages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the D.C. Minimum Wage Revision Act of 1992 ("DCMWA"), D.C. Code §§ 32-1001 *et seq.* (*See* Sixth Am. Compl. ("Compl."), ECF No. 31, at 1–2.)[1] On October 21, 2016, the parties reached a settlement in this matter. (*See* Notice of Settlement, ECF No. 66.) Before this Court at present is the parties' Joint Motion to Approve FLSA Settlement Agreement And For Dismissal, With Prejudice (*see* Joint Mot. to Approve FLSA Settlement Agreement And For Dismissal,

---

[1] Page-number citations to documents the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

With Prejudice ("Joint Mot. to Approve"), ECF No. 68)—an agreement that the parties have brought to the Court in an abundance of caution. *See Carrillo v. Dandan, Inc.*, 51 F. Supp. 3d 124, 129 (D.D.C. 2014) (noting that "[t]he D.C. Circuit has not opined about whether judicial approval is required of FLSA settlements"). For the reasons explained below, this Court concludes that the parties' proposed settlement agreement resolves a bona fide dispute and contains fair and reasonable terms. *See Sarceno v. Choi*, 78 F. Supp. 3d 446, 450–51 (D.D.C. 2015). Therefore, the parties' joint motion for approval of the settlement agreement will be **GRANTED**. A separate order consistent with this opinion will follow.

I.  **BACKGROUND**

Plaintiffs are former dancers who performed at The Stadium Club, an exotic dance club in the District of Columbia that is presently owned by Defendant RCX. (*See* Mot. to Approve at 4.)[2] Plaintiffs allege that they were "employees" within the meaning of the FLSA and the DCMWA, and thus were entitled to minimum wage and overtime compensation for the hours they worked at the club. (*See id.*) Plaintiffs also argue that Defendants subjected certain Plaintiffs to retaliation. (*See id.*)

On September 22, 2015, at Plaintiffs' request, this Court conditionally certified a class comprised of all individuals who worked at The Stadium Club from September 19, 2011, until September 22, 2015. (*See* Order Granting in Part and Den. in Part Pls.' Mot.

---

[2] At a recent hearing in this matter, Plaintiffs' counsel explained that Defendant Stadium Group, LLC originally owned The Stadium Club. (*See* February 9, 2017 Hr'g Tr. ("Hr'g Tr."), at 3.) Shortly after this litigation commenced, Stadium Group became insolvent and is currently no longer in operation. (*See id.*) Defendant RCX, LLC has purchased The Stadium Club premises, and Plaintiffs have amended their pleadings to proceed against RCX under a disputed theory of successor liability. (*See id.*) The proposed settlement agreement purports to resolve Plaintiffs' FLSA claims against both Defendants. (*See* Mot. to Approve at 3–4.)

for Notice to Potential Pls. and for Conditional Certification, ECF No. 30, at 1.) Thereafter, several additional Plaintiffs opted into this action. (*See* Mot. to Approve at 4.) The parties then engaged in a period of discovery, and elected to pursue mediation. (*See id.* at 5, 6, 9.)

After completing two full-day mediation sessions, RCX reached a settlement agreement with each of the individual plaintiffs. (*See id.* at 6.) Pursuant to the terms of the proposed agreement, RCX agreed to pay each Plaintiff an amount that varied between $1,700 and $17,200 (totaling $165,100), plus attorneys fees and costs, in exchange for Plaintiffs' promise to release RCX from "any and all claims for any wage and hour violations that may have occurred arising from or relating to each Plaintiff's employment[,] . . . whether known or unknown, . . . through the date each Plaintiff signs [the] Agreement." (Settlement Agreement, ECF No. 68-1, at 6.) To fulfill this payment obligation, RCX agreed to make quarterly installment payments to each of the named Plaintiffs over the course of approximately three years, calculated based on each Plaintiff's pro rata share of the total settlement amount. (*See id.* at 4 (outlining Plaintiffs' proportionate shares of the settlement fund).) In addition, the proposed agreement provides $99,900 in compensation for attorneys' fees and costs, which represents approximately 37% of the total $265,000 recovery amount. (*See* Settlement Agreement Payment Schedule A, ECF No. 68-2, at 1.)

On December 21, 2016, the parties jointly moved for this Court's approval of the proposed settlement agreement. (*See generally* Mot. to Approve.) This Court held a hearing regarding the terms of the settlement on February 9, 2017.

## II.     LEGAL STANDARD

"The D.C. Circuit has not opined about whether judicial approval is required of FLSA settlements reached after an FLSA suit has been filed or the related issue of whether such approval is a prerequisite for subsequent judicial enforcement of a private settlement." *Sarceno*, 78 F. Supp. 3d at 449.  However, given that a court's refusal to assess proposed FLSA settlements *ex ante* "leaves the parties in an uncertain position[,]" courts in this district often agree to review proposed FLSA settlements when the parties jointly seek judicial approval.  *Carrillo*, 51 F. Supp. 3d at 131; *see also Sarceno*, 78 F. Supp. 3d at 449–50.  Notably, however, "[t]he Court's review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims." *Carrillo*, 51 F. Supp. 3d at 134.

When assessing the terms of an FLSA settlement agreement, the court must first determine whether the proposed settlement "resolves a bona fide dispute." *Carrillo*, 51 F. Supp. 3d at 131.  "A settlement is bona fide if it reflects a reasonable compromise over issues that are actually in dispute[.]" *Sarceno*, 78 F. Supp. 3d at 450 (internal quotation marks and citation omitted).  Then, "[o]nce a bona fide dispute has been established, the court must consider whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* at 450 (second alteration in original) (internal quotation marks and citation omitted).  This second inquiry takes into account the "'totality of the circumstances'" with an eye toward whether an FLSA settlement is fair and reasonable.  *Carrillo*, 51 F. Supp. 3d at 132 (explaining that "the focus is on

the fairness of the process used by the parties to reach settlement and the practical ramifications of the settlement"); *see Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *see also Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016) (acknowledging that "many courts have adopted a totality of circumstances approach" and thereafter adopting a variation on that approach). The factors that a court considers include "whether the proposed settlement (1) was the product of overreaching by the employer; (2) whether the settlement was the product of negotiation between represented parties following . . . [a]rm's length bargaining[;] and (3) whether there exist serious impediments to the collection of a judgment by the plaintiffs." *Carrillo*, 51 F. Supp. 3d at 132 (alterations in original) (internal quotation marks omitted).

Furthermore, when a proposed settlement of FLSA claims includes the payment of attorneys' fees, courts regularly assess the reasonableness of the fee award. *See, e.g.*, *Wolinsky*, 900 F. Supp. 2d at 336. In reviewing fee awards in similar contexts, courts in this jurisdiction have considered the percentage of the recovery that is comprised of attorneys' fees, as well as the relationship between the costs incurred and the fees recovered. *See Sarceno*, 78 F. Supp. 3d at 452; *see also Carrillo*, 51 F. Supp. 3d at 134 (explaining that courts are "reluctant to approve a settlement where the plaintiffs' attorneys receive more in compensation than the plaintiffs themselves").

### III. ANALYSIS

#### A. This Court Finds That The Parties' Proposed Settlement Agreement Resolves A Bona Fide Dispute And Is Fair And Reasonable

The parties in the instant case have identified several genuine disputes of fact and law that would need to be addressed in order to resolve Plaintiffs' FLSA claims.

These disputes involve issues that are substantial and material, such as (1) whether Plaintiffs even qualify as "employees" for the purpose of the relevant wage-and-hour statutes (i.e., it may well be that Plaintiffs are independent contractors with no right to wages or statutory protections, *see, e.g.*, *McFeeley v. Jackson St. Entm't*, 825 F.3d 235, 241–44 (4th Cir. 2016) (assessing whether exotic dancers should be classified as independent contractors or employees); *Reich v. Circle C. Invs. Inc.*, 998 F.2d 324, 327–29 (5th Cir. 1993) (same)); (2) what number of hours each Plaintiff worked at The Stadium Club during the relevant period (*see* Mot. to Approve at 8); and (3) whether the payments Plaintiffs received in exchange for private or semi-private dance performances included service fees owed to Defendants that might have exceeded any minimum wage obligation Defendants owed (*see* February 9, 2017 Hr'g Tr. ("Hr'g Tr."), at 6, 7). These disputes clearly demonstrate that bona fide issues exist regarding both Plaintiffs' entitlement to any additional compensation at all, and also the amount of wages, if any, that Defendants owe to them. *See Sarceno*, 78 F. Supp. 3d at 450.

This Court also concludes that the parties' proposed terms for settling this matter are fair and reasonable, in light of the totality of the circumstances surrounding this settlement agreement. To determine the value of the wage claims to each Plaintiff, each Plaintiff individually estimated the total number of hours she worked at The Stadium Club, and that figure was multiplied by the applicable minimum wage in the District of Columbia during the relevant time period. (*See* Hr'g Tr. at 3–4, 6–7 (statement of Plaintiffs' counsel).)[3] For its part, RCX evaluated partially-complete

---

[3] Plaintiffs' counsel explained that estimates were required because timekeeping and record keeping are not the norm in this industry, and Plaintiffs do not have any contemporaneous time records that indicate the actual number of hours each Plaintiff worked at The Stadium Club. (*See* Hr'g Tr. at 3–4, 7.)

contemporaneous time records that its predecessor had maintained, and used this partial data to extrapolate an estimate of the total number of hours each Plaintiff worked. (*See id.* at 10–12.) RCX then multiplied this amount by the applicable minimum wage, and determined that its overall liability to Plaintiffs collectively was either $131,000 or $82,000, depending on the application of two different compensation theories. (*See id.*)[4]

According to the parties, these extrapolated figures drove the subsequent settlement negotiations. (*See id.* at 12.) At first, after reviewing RCX's estimate of the hours worked and the amount to be paid to each Plaintiff, a number of individual Plaintiffs contested RCX's estimation. (*See id.* at 8.) The parties soldiered on despite this disagreement and, ultimately, each individual Plaintiff was presented with, and consented to, an individualized settlement amount, which, together with attorneys' fees, totaled $265,000—a figure well in excess of the amount RCX had originally calculated. (*See id.* 9, 11–12.) Thus, when the Court considers "where the settlement amount falls between the plaintiffs' position and [that of] the defendant[,]" *Sarceno*, 78 F. Supp. 3d at 451, it finds that the instant agreement "provides total damages closer to that asserted by the plaintiffs" in a manner that does "not appear to be . . . a product of employer 'overreaching.'" *Carrillo*, 51 F. Supp. 3d at 133–34.

Nor does it appear that anything more than arm's length negotiation was at play with respect to the parties' agreement. *See Carrillo*, 51 F. Supp. 3d at 132. Prior to reaching a settlement, the parties "engaged in meaningful discovery and investigation of

---

[4] These amounts varied based on a disputed "tip credit factor" (*see* Hr'g Tr. at 6, 11–12), the contours of which are not discussed herein, as they are not directly pertinent to this Court's assessment of the fairness of the proposed settlement.

7

the claims, including exchange of relevant documents." (Mot. to Approve at 9.) Moreover, the parties participated in two full-day mediation sessions with the assistance of two well-regarded mediators (*see* Mot. to Approve at 6; Hr'g Tr. at 4–5), and throughout the negotiation process, all parties were represented by counsel with "significant experience litigating employment claims, including claims under the FLSA for unpaid overtime and hours worked." (Mot. to Approve at 9.) "The process by which the instant settlement was reached, therefore, bears all the indicia of one that leads to a just outcome." *Carrillo*, 51 F. Supp. 3d at 134.

Finally, the Court notes that Plaintiffs would likely face myriad difficulties in obtaining a judgment if litigation continued, which makes settlement a reasonable alternative. *See id.* at 132. Counsel for both parties have acknowledged that this case "involves uncertainty in terms of duration, cost, and result" (Mot. to Approve at 9), because a number of issues—such as the total number of hours that Plaintiffs actually worked—would be left to the trier of fact (*see* Hr'g Tr. at 3–5, 8). Furthermore, as Plaintiffs' counsel explained at the motion hearing, Defendant Stadium Group, LLC (the original owner of The Stadium Club) went out of business shortly after Plaintiffs filed suit, and Plaintiffs subsequently amended the lawsuit to add Defendant RCX, LLC (the purchaser of The Stadium Club) as a successor employer. (*See* Hr'g Tr. at 3.) This circumstance brought concerns about RCX's liquidity to the fore throughout the negotiation process, and it means that even if Plaintiffs opted to litigate this matter to judgment and were successful, there would be a real risk that a large damages award might bankrupt RCX, and potentially leave Plaintiffs with no recovery. (*See id.* at 8–9.) Based on these representations, "the Court is satisfied that the settlement

appropriately considers the potential benefits and pitfalls of proceeding to trial." *Sarceno*, 78 F. Supp. 3d at 452.

    **B.**    **The Proposed Attorneys' Fees Are Reasonable**

Turning to the negotiated attorneys' fees amount ($99,900), this Court notes that the proposed fee award represents approximately 37% of the total recovery. (*See* Settlement Agreement Payment Schedule A at 1.) Plaintiffs' counsel had originally agreed to represent Plaintiffs in exchange for a 40% contingency fee, but ultimately agreed to accept the lower percentage in order to facilitate settlement of this matter. (*See* Hr'g Tr. at 19–20.) During the hearing, Plaintiffs' counsel acknowledged that this gross payment amount exceeds the lodestar rates calculated under the USAO *Laffey* Matrix—which equal approximately $54,000 (*see id.* at 20–21; *see also* Stadium Club Litigation Billing Records, Attach. A to Hr'g Tr.).[5] However, Plaintiffs' counsel began incurring costs in connection with this case in 2014, and will receive the proposed fee amount in installments over a period of 2.5 years (ending in 2019) (*see* Hr'g Tr. at 20–21 ("[M]y clients haven't paid a cent, and my firm and my partners have carried this case for about two and a half years.")). *Cf. Ashraf-Hassan v. Embassy of France*, 189 F. Supp. 3d 48, 57 (D.D.C. 2016) (authorizing calculation of fee award under Title VII using current, rather than historical, fee rates in order to "compensat[e] for delay" between the first billing and the final payment). Furthermore, given the state of RCX's finances, this payment structure carries certain inherent risks, and this Court also

---

[5] Plaintiffs' counsel provided his Stadium Club Litigation Billing Records at the motion hearing held on February 9, 2017, and these records are attached to the hearing transcript as Exhibit A. (*See* Stadium Club Litigation Billing Records, Attach. A to Hr'g Tr.) At the motion hearing, Plaintiffs' counsel explained that he calculated his *Laffey* rate pursuant to the rate outlined in the 2016–17 USAO *Laffey* Matrix for lawyers with 8-10 years of experience. (*See* Hr'g Tr. at 23.)

recognizes that the attorney-client relationships that Plaintiffs' counsel managed posed certain challenges. (*See* December 15, 2016 Hr'g Tr. ("[T]here are multiple plaintiffs in this case and they are somewhat transient." (statement of Plaintiff's counsel)).) Thus, this Court finds that the proposed attorneys' fees are reasonable. *See Sarceno*, 78 F. Supp. 3d at 452 (approving settlement agreement where attorneys' fees represented less than half of the total recovery); *Carrillo*, 51 F. Supp. 3d at 134 (approving settlement agreement where attorneys' fees accounted for slightly more than fifty percent of the total recovery).

## IV. CONCLUSION

For the foregoing reasons, the parties' Joint Motion to Approve FLSA Settlement Agreement is **GRANTED**, insofar as the agreement represents a bona fide compromise of Plaintiffs' FLSA claims that is fair and reasonable.[6] An appropriate Order accompanies this Memorandum Opinion.

DATE: February 17, 2017

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[6] The Court declines to opine on any aspect of the Agreement that does not pertain directly to the compensation due to Plaintiffs and Plaintiffs' counsel. *See Carrillo*, 51 F. Supp. 3d at 134–35.